### SHEPARD et al. v. EXCELSIOR STEEL FURNACE CO.

(Circuit Court of Appeals, Seventh Circuit. January 13, 1905.)

PATENTS—NOVELTY—PIPE ELBOWS.

The Kemp patent, No. 607,620, for a pipe elbow of corrugated sheet metal, is void for lack of patentable novelty, in view of the prior art.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

The bill was to restrain infringement of letters patent No. 607,620, issued July 19th, 1898, to William A. Kemp for improvements in pipe elbows. The bill was dismissed by the Circuit Court.

The substantial parts of letters patent No. 607,620 with the drawings, are as follows:

*Fig. 3.*

*Fig. 4.*    *Fig. 5.*

*Fig. 6.*    *Fig. 7.*

"This invention relates to that class of pipe-elbows which are made of sheet metal, particularly stovepipe-elbows, and which are radically crimped or corrugated, and has the object to improve and simplify the construction of such elbows and to produce them more expeditiously and economically than heretofore.

"In making my improved pipe-elbow a blank of sheet metal of proper size is first corrugated transversely and rather coarsely. The blank is then bent up into tubular form, so that the corrugations extend circumferentially around the tube and the longitudinal edges of the blank overlap each other. The corrugated part of the pipe is then compressed in the axial direction of the pipe, whereby the corrugations are brought closely together, and the lapped parts along the joint are secured together, and the pipe is finally bent to the form of an elbow with the corrugated and compressed lap-joint on the inner side of the elbow, whereby the corrugations are spread or distended on the outer or circumferential side of the elbow.

"In the accompanying drawings, consisting of two sheets, Figure 1 is an edge view of the sheet-metal blank after the same has been coarsely corrugated. Fig. 2 is a top plan view of the same. Fig. 3 is a side elevation showing the corrugated blank rolled into a tube or pipe. Fig. 4 is an end view of the

same.  Fig. 5 is a longitudinal section of the corrugated pipe or tube, showing the corrugations compressed.  Fig. 6 is a similar view showing the pipe or tube bent into the form of an elbow.  Fig. 7 is an end view of the same.

"Like letters of reference refer to like parts in the several figures.

"The blank from which the pipe-elbow is made consists of a rectangular sheet of any suitable kind of metal.  If the elbow to be produced is a stove-pipe-elbow, a suitable grade of sheet-iron is used.  This sheet is first provided intermediate of its ends with a number of transverse corrugations a, which extend from one longitudinal side of the sheet to the other, leaving an uncorrugated portion of a' at each end of the sheet, as represented in Figs. 1 and 2.  The corrugations are comparatively coarse, and while forming the same in the sheet the latter is not confined, thereby permitting of shortening the blank and avoiding stretching or weakening of the metal.  The corrugated blank is next formed into a pipe or tube by bending or rolling the blank transversely, so that the end portions of the blank receive a cylindrical form, as shown at b, Figs. 3 and 4, and the corrugations extend circumferentially around the central portion of the pipe, as shown at b' in the same figures.  In forming the corrugated blank into a tube or pipe the longitudinal edge portions of the blank are lapped one over the other, as shown at e, Fig. 4, with one end of each corrugation lying on the opposite end of the same corrugation.  The corrugations are next compressed endwise and uniformly by means of any suitable compressing machine or apparatus, so that they are forced closely together around the entire circumference of the pipe, thereby shortening the pipe, as represented in Fig. 5, and firmly binding or interlocking the overlapping corrugated portions of the pipe which form the lap-joint.  After the corrugations have been so compressed the pipe is bent into elbow form or so that one end stands at an angle to the other end, as represented in Fig. 6.  During the operation of bending the pipe the portions of the corrugations on the outer or circumferential side of the elbow are again distended or stretched apart, as shown at c, Fig. 6, while the portions of the corrugations on the inner or throat side of the elbow remain in their closely-compressed condition, as shown at c' in the same figure.  The corrugated pipe is bent with the joint or over-lapping portions arranged on the inner or throat side of the elbow, so that the longitudinal corrugated edge portions of the pipe remain firmly interlocked, thereby forming a joint along the throat side of the pipe which is sufficiently tight and requires no other or additional fastening.

"This method of making pipe-elbows permits of making the same out of a low and cheap grade of sheet metal, because the metal is not stretched to any considerable extent at any stage during the manufacture of the elbow. The edges of the sheets do not require to be squared, as no seaming is required to secure the longitudinal edges together.  The time required for making the elbow is reduced to a minimum, the required operations are of the simplest kind, and the elbow is in this manner produced at very low cost, while being very strong and also very attractive in appearance.

"The overlapping parts of the uncorrugated end portions of the elbow may be secured together by rivets f, if desired.

"I claim as my invention—

"A sheet-metal elbow having a simple lap-joint at its inner or throat side and having corrugations which extend without break circumferentially around the elbow at the outer curve thereof and which are pressed against each other at the inner or throat side of the elbow, whereby the two thicknesses of the lap-joint are clamped together while the elbow is composed of a single thickness of corrugated metal at the outer side, substantially as set forth."

Other patents cited are as follows:

No. 121,341, Nov. 28, 1871, F. Dieckmann.
No. 128,146, June 18, 1872, H. S. Hoeller and Chas. Hoeller.
No. 164,872, June 22, 1875, J. F. Piehl.
No. 313,858, March 17, 1885, T. S. Evans and H. E. Bissett.
No. 485,124, Oct. 25, 1892, O. H. Lawrence.
No. 500,119, June 27, 1893, F. Dieckmann.
No. 681,177, Aug. 27, 1901, U. D. Alexander.
The further facts are stated in the opinion.

Thomas A. Banning and Edward F. Hard, for appellants.

Benj. F. Roodhouse, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

GROSSCUP, Circuit Judge. The claim may be divided as follows: A sheet metal elbow having (a) a lapped joint at its inner or throat side; (b) corrugations which extend without break, circumferentially around the elbow at the outer curve thereof, and which are pressed against each other at the inner or throat side of the elbow; and—as a result—(c) the fact that the two thicknesses of the lapped joint are thereby clamped close together, while the elbow remains composed of a single thickness of corrugated metal at the outer side.

The prior art shows that a sheet metal elbow having a lapped joint is not new, and that a lapped joint, at the inner or throat side of the elbow, is not new. The novelty of appellants' device, then, if it have any, consists in the specific way the lapped joint is fastened or held, viz.: by the corrugations being pressed together at the inner or throat side of the elbow.

Corrugations, extending without break circumferentially around the elbow at the outer curve, were not new. Such corrugations appear in the Lawrence elbow, patent No. 485,124; also in the second Deickmann elbow, patent No. 500,119. In each of these elbows the corrugations are pressed together at the inner or throat side of the elbow. In the Kemp patent, however, after the corrugations are made, the corrugated part of the pipe is pressed in the axial direction of the pipe, where by the corrugations are brought closely together, and the lapped parts, along the joint, are secured together. This is done before the bending takes places, so that when the pipe is finally bent, the compression on the inner side of the elbow is not changed, the elbow being obtained by spreading or distending the corrugations on the outer side. It is not shown that this process is pursued in the making of the elbows of the prior art; and it is on this specific method or process of making the elbow, that the chief claim of novelty is predicated.

It is to be noted, however, that these elbows are intended to carry off smoke; and that smoke, under draft, unlike gas or other substances acting under pressure, will carry, without leakage, through a pipe that is loosely jointed. There is no functional purpose, therefore, in the closeness of the compression obtained. The functional purpose aimed at is, not imperviousness, but strength.

Keeping this in mind, we cannot escape the conclusion that, except possibly the process, Kemp has disclosed nothing really useful that was not known before. He lays no claim to a process patent; nor does appellee follow his process. The appellee's elbow is manufactured by a machine that, instead of in one act compressing the corrugations axially, as Kemp does, crimps or corrugates the elbow, serially—corrugation upon corrugation—until the elbow is completed. True the article, as an article, is perhaps nearly the same as Kemp's. The same kind of close contact of corrugations

is obtained. But Kemp has not obtained a patent on the process; nor does appellee employ the process; and Kemp has no patent on the mere closeness of the corrugations. So in any view that can be taken, Kemp has no right to prevent appellee from manufacturing and selling the article.

The decree of the Circuit Court will be
Affirmed.